```
 1                          UNITED STATES DISTRICT COURT
                            EASTERN DISTRICT OF NEW YORK
 2

 3   ---------------------------------X
                                      :
 4   RUNS LIKE BUTTER INC.,           :
                                      :  19-CV-02432 (ARR)
 5                 Plaintiff,         :
                                      :
 6           v.                       :
                                      :  September 5, 2019
 7   MVI SYSTEMS LLC, et al.,         :  Brooklyn, New York
                                      :
 8                 Defendants.        :
                                      :
 9   ---------------------------------X

10
             TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
11              BEFORE THE HONORABLE JAMES ORENSTEIN
                   UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:

14
     For the Plaintiff:          DAVID LIN, ESQ.
15                               Lewis & Lin LLP
                                 81 Prospect Street
16                               Brooklyn, New York 11201

17

18   For the Defendants:         MAX MOSKOVITZ, ESQ.
                                 Ostrolenk Faber LLP
19                               1180 Avenue of the Americas
                                 New York, New York 10036
20

21

22   Court Transcriber:          SHARI RIEMER, CET-805
                                 TypeWrite Word Processing Service
23                               211 N. Milton Road
                                 Saratoga Springs, New York 12866
24

25



     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

```
 1   (Proceedings began at 2:33 p.m.)
 2            THE CLERK:  Civil Cause for a Status Conference,
 3   Runs Like Butter Inc. v. MVI Systems LLC, et al., Docket No.
 4   19-CV-2432.
 5            Will the parties please state their appearances for
 6   the record starting with the plaintiff.
 7            MR. LIN:  Good afternoon, Your Honor.  David Lin
 8   from Lewis & Lin on behalf of the plaintiff.
 9            MR. MOSKOVITZ:  Good afternoon, Your Honor.  Max
10   Moskovitz for the defendants, MVS Systems, and Samuel Taub.
11            THE COURT:  Good afternoon.  All right, folks.  So I
12   have your exchange of letters.  Has there been any development
13   since the most recent letter?  Has the company been sold?
14   Have you reached any agreement about what's going to happen?
15   It's two weeks already.
16            MR. MOSKOVITZ:  Your Honor, I'm not so good of
17   hearing.  I'm a little --
18            THE COURT:  Assistive devices that we can --
19            MR. MOSKOVITZ:  So I don't hear you.
20            THE COURT:  Could you give him --
21                    [Pause in proceedings.]
22            THE COURT:  We have hearing assistance devices.
23            MR. MOSKOVITZ:  Oh, okay. Now I hear you.  Good.
24   Thank you.
25                    [Pause in proceedings.]
```

3

1              THE COURT:  Is that better?
2              MR. MOSKOVITZ:  Yes, much better.
3              THE COURT:  So what I was asking is the last letter
4    was yours, Mr. Moskovitz, on August 14th.  That was a few
5    weeks ago.  Has there been any further progress on any of
6    these issues?
7              MR. MOSKOVITZ:  No contact whatsoever other than the
8    plaintiff serving discovery and issuing notices of deposition.
9              THE COURT:  But on the disposition of the company
10   it's not been sold?
11             MR. MOSKOVITZ:  Nothing.
12             THE COURT:  All right.  Well, what, Mr. Lin, exactly
13   do you want to have happen?  I'm not sure attachment is the
14   appropriate court here but there's certainly something of
15   great concern based both on what Mr. Taub told you and also
16   what Mr. Moskovitz told you.
17             MR. LIN:  Right, Your Honor.  I think Mr.
18   Moskovitz's letter made clear that there are plans to transfer
19   assets.  We don't know when it's going to be -- whether it's
20   going to be tomorrow -- I mean --
21             THE COURT:  I take it, Mr. Moskovitz, any transfer
22   of the assets would wait until after the resolution of this
23   case, would it not?  I certainly think it should but perhaps
24   you'll tell me otherwise.
25             MR. MOSKOVITZ:  Okay.  Let me -- I that think

4

1  whatever event was alluded to happened already.
2              THE COURT:  What -- then tell me exactly what
3  happened because if something has happened to the assets of
4  the defendants then clearly we'll need an amended complaint
5  for fraudulent conveyance and they'll need to find another
6  lawyer who isn't a fact witness to the planning of it.
7              MR. MOSKOVITZ:  First of all, point one, the first
8  time I heard about the refinancing -- that's why I'm calling
9  it, I tell you is from Mr. Lin's letter.  Never heard about
10 it.
11             THE COURT:  No.  Sir, I'm looking at the email you
12 sent to Mr. Lin.  But before you do so I will share with you
13 based on what I heard from my client yesterday about a
14 reorganization of the business.  There's some truth to what
15 Mr. Taub said.
16             MR. MOSKOVITZ:  Good.
17             THE COURT:  So, look, you're a fact witness now.
18             MR. MOSKOVITZ:  No, no.  Allow me just -- event one
19 is the letter from Mr. Lin.
20             THE COURT:  No.  Event one is your client
21 threatening to dissipate the assets of his company which is a
22 way to get him to back off of a settlement.
23             MR. MOSKOVITZ:  Which I know nothing about because
24 I'm not involved.
25             THE COURT:  Mr. Moskovitz, it's not about you.  It's

5

1  about your client.
2           MR. MOSKOVITZ:  Correct.  Correct.
3           THE COURT:  It's not you.  Your client.  Your client
4  started this apparently by threatening a fraudulent conveyance
5  to avoid having assets to pay.  Then you get in the picture
6  and you say well, here's what's going on because my client
7  told me.  You should know what my client said.  He's actually
8  planning to get rid of some of his assets.
9           MR. MOSKOVITZ:  May I?  It's true.  My client made
10 some statements.  He wrote something through LinkedIn to the
11 principal of the plaintiff.  I know nothing about it.  I know
12 nothing about what he said.  Then comes a letter from Mr. Lin
13 and obviously I want to find out for myself because I'm an
14 attorney.  I should find out because otherwise I cannot
15 respond.
16          And that is when I hear that there was a refinance
17 and that means that investors are actually doing the opposite
18 of what I would say is called -- so-called fraudulent
19 conveyance.  The opposite.  Investors are investing a million
20 dollar into the company.  That's what is happening but the
21 letter from Mr. Lin that was very concern to me is because the
22 letter -- Mr. Lin, if I intimated that I was part of the
23 transaction of the refinancing which I was not -- I'm not a
24 corporate attorney.  I'm not involved.  I'm a patent attorney.
25          THE COURT:  I'm not saying you were involved in the

```
                                                                  6
 1   transaction.  You were a --
 2             MR. MOSKOVITZ:  I didn't know about it.
 3             THE COURT:  Am I going to finish my sentence?
 4             MR. MOSKOVITZ:  Yes, sure.  Sorry.
 5             THE COURT:  Whether or not you're a corporate
 6   attorney you purported to have firsthand information about
 7   your client's intentions with respect to the conveyance.  So
 8   if there's the need to litigate the bona fides of that
 9   conveyance you are a fact witness to it which complicates your
10   ability to remain as counsel if there is a fraudulent
11   conveyance claim because you will be a fact witness to the
12   events at issue.
13             Perhaps we won't need to get there.  Has any assets
14   been transferred?
15             MR. MOSKOVITZ:  And the answer is I simply don't
16   know because I have nothing to do and no knowledge about any
17   specific --
18             THE COURT:  Then let's get your client in here along
19   with all of the documents regarding that transaction.  You
20   can't simply avert your gaze from something that your client
21   is doing to avoid paying a judgment.
22             MR. MOSKOVITZ:  I understand. Okay.  I'm listening.
23             THE COURT:  So by Friday -- well, that's tomorrow.
24   By Monday make sure that Mr. Lin has all of the documents
25   about this purported investment including any documentation of
```

1 assets that have been transferred.  By Monday, please.
2            MR. MOSKOVITZ:  Okay.  Can we -- Your Honor, I'm a
3 little bit, let's put it as surprised, because I am totally
4 not involved in that transaction at all.
5            THE COURT:  You are involved as counsel of record
6 for the defendants in this case and you are the only person
7 standing here who can answer for what Mr. Taub has done.  So
8 if you're not up to speed on that you should be.
9            MR. MOSKOVITZ:  I don't know.  I don't know.
10           THE COURT:  Yes, that's not an acceptable answer.
11 You are required by an order I issue in every case to know the
12 facts of the case when you come here.
13           MR. MOSKOVITZ:  Okay.
14           THE COURT:  So find out.  I'll wait.  Call your
15 client now.
16           MR. MOSKOVITZ:  Yes, I can do that.
17           THE COURT:  Yes.  Find out what he's conveyed.
18           MR. MOSKOVITZ:  Okay.  I'll do that.  Should I do
19 this while Your Honor is here, make the telephone call?
20           THE COURT:  Yes.
21           MR. MOSKOVITZ:  Okay.  I can use my cell phone.
22           THE COURT:  Go out into the hall if you want some
23 privacy.
24           MR. MOSKOVITZ:  Okay.  I will do that.
25           THE COURT:  Find out.  I want an answer.

8

1  (Off the record at 2:41 p.m.)
2  (Back on the record at 2:45 p.m.)
3             MR. MOSKOVITZ:  I tried to call him.  I'm getting a
4  busy signal.  So I called my secretary to send an email to him
5  and to his partners to call my cell.  I just told my secretary
6  to send him an email because I don't have in my head the email
7  address.  I have in my computer but not in here.
8             THE COURT:  How convenient that you can't reach your
9  client.  Okay.  Well, we'll find out.  Look, we can't get the
10 answer today.
11            MR. MOSKOVITZ:  [Inaudible]
12            THE COURT:  We can't get the answer today.  So I'm
13 sure you can get an answer by tomorrow and send it to Mr. Lin
14 and follow up on Monday with all of the underlying documents
15 of any asset transfer.
16            MR. MOSKOVITZ:  May I ask that first as an attorney
17 I would make is that everything is taken in confidence.
18            THE COURT:  No, it's discovery.
19            MR. MOSKOVITZ:  What is that?
20            THE COURT:  Discovery.  So look, confidence or no,
21 he needs to know if your client is trying to cheat.  That's
22 the basis --
23            MR. MOSKOVITZ:  Yes, yes.  But I'm asking that just
24 initially it be looked upon as attorney's eyes only before it
25 gets published to its competitors.

9

1           THE COURT:  Why?  What's the secret?
2           MR. MOSKOVITZ:  Financial information of a company.
3   I don't know.  As an attorney I would usually typically in my
4   field, intellectual property --
5           THE COURT:  I'm not doing it on spec.  If there's
6   something you think he shouldn't be allowed to disclose make a
7   motion for a protective order once you have the information to
8   justify it.
9           MR. MOSKOVITZ:  And I will tell because I do want to
10  be a hundred percent candid with the Court, I asked what is
11  the transaction.  I was told that the company needs more money
12  which is the opposite [inaudible] the company and therefore
13  they were soliciting investors which they hope going to give a
14  percentage of the company in order to finance the company to
15  go forward.  These are investors are investing, if my
16  information is correct, one million dollars and for their own
17  protection they requested something in the corporate
18  structure.  So they are protected, the details of which I
19  don't have because I'm not involved in that transaction as
20  counsel.  I don't know who is.
21          THE COURT:  But their ability to secure a judgment
22  against the company is unaffected.
23          MR. MOSKOVITZ:  Absolutely. I think that -- as an
24  attorney, and I don't have all the facts, I am so confident
25  that I am -- maybe I'm overstepping it.  My personal --

10

1  because based on conversation with my client that nothing of
2  the sort [inaudible] is happening.
3              THE COURT:  Your personal what?
4              MR. MOSKOVITZ:  It means of hiding assets or
5  secreting away --
6              THE COURT:  It sounded like you were going to say
7  your personal guarantee.
8              MR. MOSKOVITZ:  No.
9              THE COURT:  Because -- and I'm guessing that you
10 don't have quite that much faith in what's going on to make it
11 a personal guarantee and I'm not suggesting you should but you
12 wouldn't want -- that would be yet another reason to withdraw
13 as counsel if you're personally on the hook and I don't think
14 you should be.
15             Look, if it's simply an investment and the corporate
16 entity retains all of its assets and can pay a judgment no
17 problem.  Right?
18             MR. LIN:  I don't see a problem with that.
19             MR. MOSKOVITZ:  I'm not -- from what I heard this is
20 what's happening.  In fact, its ability to pay a judgment is
21 improved because of the investment.
22             THE COURT:  Perhaps.  As long as it's not impaired
23 no problem.
24             MR. MOSKOVITZ:  Yes.  That's what I know.
25             THE COURT:  We'll find out.

```
                                                             11
 1              MR. LIN:  I agree with Your Honor as long as it's
 2   not impaired there shouldn't be a problem.  The issue is the
 3   representation that Mr. Taub made was that it's being
 4   liquidated and there's --
 5              THE COURT:  Has he been deposed yet?
 6              MR. LIN:  No, not yet.  We sent out notices.
 7              THE COURT:  When is that going to happen?
 8              MR. LIN:  October.
 9              THE COURT:  Well, certainly the communication he had
10   threatening to hollow out the company and make it judgment
11   proof is fair game for the deposition and therefore any
12   documents pertinent to that should be provided well in
13   advance.
14              Now, I'm directing that they be provided by Monday.
15   If there's some reason why you can't get your hands on
16   something by then you'll talk to Mr. Lin and see if you can
17   agree on something but --
18   (Phone ringing.)
19              MR. MOSKOVITZ:  Can I ask you questions and I'll put
20   you on speaker?
21              THE COURT:  Don't put it in speaker.  Go talk to
22   your client in private, please.
23              MR. MOSKOVITZ:  I'm walking out of court and I'm
24   going to ask you a few questions.  Yes, Your Honor.
25   (Off the record at 2:50 p.m.)
```

12

1  (Back on the record at 2:52 p.m.)
2           THE COURT:  What did you find out?
3           MR. MOSKOVITZ:  Your Honor, I think that I can
4  answer fully a response to the whole concern.  So I asked my
5  client exactly what did you guys do.  He said that the
6  investors created a new entity, MVI Industries.  MVI Systems,
7  which is the nominal defendant here, did an [inaudible]
8  including all its liabilities to MVI Industries.  And I asked
9  my client can I tell the judge that the plaintiff can amend
10 the name of the defendant to MVI Industries that purchased all
11 the assets with the liabilities.  He said yes.
12          So, therefore, the net of the whole transaction,
13 visa-vis this lawsuit, is nothing.  The way I understand it,
14 and I'm not an expert in contract law --
15          THE COURT:  Step away from the microphone a little
16 bit.  Step away from it because the interference is --
17          MR. MOSKOVITZ:  This way?
18          THE COURT:  Good.  So all right.  Mr. Lin.
19          MR. LIN:  I don't know if the net is nothing.  I'd
20 have to look into that but I will look at the documents.
21          THE COURT:  Right.  So get him the documents for the
22 transaction by Monday.
23          MR. MOSKOVITZ:  Yes, no problem.
24          THE COURT:  And if you want to amend either to add
25 or substitute the new corporate entity that's on consent.

13

1  I don't want to speak out of turn. You said
2  substitute or you suggested a substitute.
3  　　　　　MR. MOSKOVITZ:  Or add.
4  　　　　　THE COURT:  Or add, okay.  That's good with you as
5  well.
6  　　　　　MR. MOSKOVITZ:  No, it's not an issue.
7  　　　　　THE COURT:  Got it.  But as far as you're concerned
8  whatever amendment to the pleading is needed to insure that
9  the assets previously at stake remain at stake is okay with
10 you?
11 　　　　　MR. MOSKOVITZ:  Everything is okay.  Full consent.
12 Full liability.  No [inaudible] any rights to collect against
13 anybody.  A hundred percent.
14 　　　　　THE COURT:  And I'll assume that you'll get the
15 information and either file a new pleading or not as you deem
16 fit but that there's no need for further action by me unless I
17 hear from you.
18 　　　　　MR. MOSKOVITZ:  Yes.  [Inaudible] documents exactly
19 for the transaction will be provided.
20 　　　　　THE COURT:  Okay.  Good.  All right.  Let me just
21 take a look here.
22 　　　　　　　　　　[Pause in proceedings.]
23 　　　　　THE COURT:  We're getting together next on December
24 10th at 10:30 after the close of discovery.  Do you anticipate
25 everything is going to be pleaded on time?

14

1      MR. LIN:  At this point, yes.

2      MR. MOSKOVITZ:  I assume so but I did want to bring
3 up because I raised other issues related to discovery.  If
4 Your Honor would permit me.

5      THE COURT:  Okay.

6      MR. MOSKOVITZ:  I would like to discuss a little bit
7 -- I'm not sure how much -- how much Your Honor is invested in
8 the substance of the case.  What Samuel Taub, or his company,
9 maybe an employee have done, is they have -- if they purchased
10 from one of the registrars of the main names.  The main names
11 that have the word butterfly and [inaudible].

12      When the complaint was filed on that day Samuel Taub
13 originally didn't retain me as counsel event though I'm his
14 counsel in other matters.  He appeared pro se.  He wanted to
15 appear pro se, Judge.  The judge told him you cannot do that.
16 On the spot he said he committed that all of the domain names
17 will be transferred immediately to the plaintiff and in fact
18 they are.  This --

19      THE COURT:  I've got limited time and you said you
20 had something about discovery to tell me.

21      MR. MOSKOVITZ:  Yes.

22      THE COURT:  Quickly.

23      MR. MOSKOVITZ:  So I was informed by my colleague,
24 Ariel Peikes, who was here with Your Honor last time, that
25 Your Honor -- Your Honor stated that Your Honor would like for

1   the -- if the parties cannot settle themselves there should be
2   a mediation between the parties because there is a mediator
3   and there are principals present they will hear -- the
4   principals will hear from the mediator maybe stuff that their
5   own attorneys will not tell them --
6              THE COURT:  Mr. Moskovitz, again, please, I'm
7   begging you.  You said you had a discovery issue.  What is it?
8              MR. MOSKOVITZ:  So I would -- so therefore I would
9   like that Your Honor should allow this case to go to mediation
10  and --
11             THE COURT:  That's not a discovery.  What's your
12  discovery issue?
13             MR. MOSKOVITZ:  And suspend the discovery because --
14             THE COURT:  I'm not staying discovery.  If you want
15  -- -- if you can consent to a referral to mediation by all
16  means.  Let me know.  Write in, talk to each other.  Don't do
17  this one sided because I'm not going to force it one sided.
18  Talk to each other.  If you both want a mediation I'll
19  certainly refer you.  If you want unanimously to stay
20  discovery I'll consider that.  I'd like to get this case
21  moving one way or another but please don't just raise that in
22  the first instance with me.  Talk to each other first.
23             Anything else for today?
24             MR. LIN:  Not for us.
25             THE COURT:  Anything else?  Okay.  Thank you both.


```
                                                                    16
 1  Have a good day.
 2               MR. MOSKOVITZ:  Thank you, Your Honor.
 3  (Proceedings concluded at 2:57 p.m.)
 4                         *  *  *  *  *
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                                17
 1      I certify that the foregoing is a court transcript from
 2  an electronic sound recording of the proceedings in the above-
 3  entitled matter.
 4
 5                              _____
 6                                   Shari Riemer, CET-805
 7  Dated:  September 9, 2019
```