DAVID D. LIN (DL-3666)
LAUREN VALLI (LV-7672)
LEWIS & LIN, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
David@iLawco.com
Lauren@iLawco.com

Telephone: (718) 243-9323
Facsimile: (718) 243-9326

*Attorneys for Plaintiff*
*Runs Like Butter Inc.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUNS LIKE BUTTER INC. d/b/a BUTTERFLYMX,<br><br>          Plaintiff,<br><br>   v.<br><br>MVI SYSTEMS LLC, SAMUEL TAUB, and MVI INDUSTRIES, LLC,<br><br>          Defendants. | Case No. 1:19-cv-2432 (ARR)(JO)<br><br>**SECOND AMENDED COMPLAINT FOR CYBERSQUATTING; TRADEMARK INFRINGEMENT; UNFAIR COMPETITION AND FRAUDULENT CONVEYANCE** |

Plaintiff Runs Like Butter, Inc. d/b/a ButterflyMX®, for its complaint for damages and injunctive relief against MVI Systems LLC ("MVI"), Samuel Taub ("Taub") and MVI Industries, LLC ("MVII" and collectively with MVI and Taub, "Defendants") alleges as follows:

## PARTIES

1.    Plaintiff Runs Like Butter, Inc. d/b/a ButterflyMX® ("Plaintiff" or "ButterflyMX") is a Delaware corporation, authorized to do business as a foreign business

corporation in the State of New York, with a principal place of business in New York County, New York.

2.      Upon information and belief, Defendant MVI Systems LLC is a limited liability company organized and existing under the laws of the State of New York, with a principal place of business at 2607 Nostrand Avenue, Brooklyn, New York 11210 and a principal office at 1363 East 31st Street, Brooklyn, New York 11210, and that transacts business in the State of New York and within this judicial district.

3.      Upon information and belief, Defendant Taub is an individual domiciled in the State of New York, residing at 1363 East 31st Street, Brooklyn, New York 11210 and is the principal, CEO, Chairman and a founder of MVI.

4.      Upon information and belief, Defendant MVI Industries, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 2607 Nostrand Avenue, Brooklyn, New York 11210.

5.      Upon information and belief, Taub has an ownership interest in, operates and/or manages the business of the corporate defendant MVI and MVII.

6.      Upon information and belief, there exists, and at all times herein mentioned there existed, a unity of interest between and among Taub and MVI vis-à-vis the ownership, operation and/or management of MVI.

7.      Upon information and belief, MVI and is so dominated and controlled by Taub, such that defendants may be considered interchangeable with one another.

8.      At all times material to this action, Taub and MVI were the agents, servants, employees, partners, alter egos, subsidiaries, or joint ventures of one another, and the acts of each of them were in the scope of such relationship; in doing the acts and failing to act as

alleged in this Complaint, each of them acted with the knowledge, permission, and the consent of the other; and each aided and abetted the other in the acts of omissions alleged in this Complaint.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the laws of the State of New York.  This Court has subject matter jurisdiction, *inter alia*, pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 *et seq*.

10.      This Court has personal jurisdiction over Defendants because, upon information and belief, they reside in and/or regularly do business in this judicial district and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

11.      Venue in this judicial district is proper under 28 U.S.C. § 1391 in that Defendants reside in and/or conduct substantial business in this judicial district and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## FACTS RELEVANT TO ALL CLAIMS

### A.  ButterflyMX's Business and Goodwill and Establishment of ButterflyMX.com

12.      Plaintiff ButterflyMX is an innovative technology company based in New York and focused on developing remote building security systems for residential and commercial buildings.

13.     ButterflyMX, the maker of the remote building security systems, has developed the most secure and convenient building entry platform that tethers cloud-based software to intuitive touchscreen hardware. ButterflyMX's mission is to connect the wide variety of software-enabled services to tenants inside a building.

14.     Since launching in 2013, ButterflyMX has transformed building entry for developers, property managers, and tenants — from eliminating building wiring and in-unit hardware to property management integrations and virtual keys for service providers.

15.     ButterflyMX's business is more than just hardware and more than an intercom, ButterflyMX is the developer of top-rated smartphone apps, many integrations, and a powerful property management dashboard all designed to make property access at buildings seamless.

16.     ButterflyMX's remote building security systems are installed in many hundreds of residential, commercial, and student housing properties around the world including those developed, owned, and managed by the largest and most trusted names in real estate.

17.     To date, ButterflyMX has facilitated millions of door release transactions in properties around the world.

18.     On or around late 2012, ButterflyMX registered the <ButterflyMX.com> domain name (the "Domain Name") in connection with the marketing and promotion of Plaintiff's services.

19.     ButterflyMX operates the website located at the Domain Name (the "ButterflyMX Site") which receives thousands of visits annually.  ButterflyMX also

purchases Google AdWords and other online and print advertising to drive consumers to the ButterflyMX Site.

### B.  ButterflyMX's Trademark

20.     ButterflyMX is the beneficial owner of trademark BUTTERFLYMX® which was registered in the United States Patent and Trademark Office on March 10, 2015 (the "BUTTERFLYMX® Mark"), in Class 45 for "Control of building environmental access and security systems" and has used same in commerce since as early as March 2013.

21.     ButterflyMX uses the BUTTERFLYMX® Mark source identifier in conjunction with a variety of business and web properties. As a result, it established a reputation and goodwill in its trademark.  The mark is unique, inherently distinctive and has acquired distinctiveness through its association with ButterflyMX's business and various services sold throughout the world.

22.     ButterflyMX has devoted substantial time, effort and money in creating awareness and promoting the BUTTERFLYMX® Mark and as a result the BUTTERFLYMX® Mark has gained widespread recognition in the field of intercom software and hardware, including automated security systems, like ButterflyMX's Smart Intercom™.

### C.  Defendants' Competing Business and Trademark Infringement

23.     Upon information and belief, Defendants Taub and MVI own and operate the website <mvisystems.com>, a competitor of Plaintiff's in the business of keyless, video intercom security systems.  Upon information and belief, Defendants promote and sell a keyless intercom ("Defendants' Product") on their website ("Defendants' Website").

24.     Upon information and belief, Taub asserts that he is the owner and registrant of a U.S. Patent for Defendants' Product.

5

25.     On or about February 11, 2019, Defendants registered the domain name <ButterflyMX.co> (the "<ButterflyMX.co> Domain Name"), which is identical to the BUTTERFLYMX® Mark. The domain name precisely tracks the spelling of Plaintiff's Domain Name, with the exception of the ".co" top-level domain or "TLD".

26.      On or about February 11, 2019, Defendants registered the domain name <ButterflyMX.org> (the "<ButterflyMX.org> Domain Name"), which is identical to the BUTTERFLYMX® Mark. The domain name precisely tracks the spelling of Plaintiff's Domain Name, with the exception of the ".org" top-level domain or "TLD".

27.     On or about February 11, 2019, Defendants registered the domain name <ButterflyMX.net> (the "<ButterflyMX.net> Domain Name,")The domain name precisely tracks the spelling of Plaintiff's Domain Name, with the exception of the ".net" top-level domain or "TLD".

28.     On or about February 11, 2019, Defendants registered the domain name <buterflymx.com> (the "<buterflymx.com> Domain Name"), which is almost identical to the BUTTERFLYMX® Mark. The domain name precisely tracks the spelling of Plaintiff's Domain Name, with the exception of the elimination of one "t" in "ButterflyMX" and the ".com" top-level domain or "TLD".

29.     On or about February 11, 2019, Defendants registered the domain name <butterfly-mx.com> (the "<butterfly-mx.com> Domain Name," collectively with the <ButterflyMX.co> Domain Name, <ButterflyMX.org> Domain Name, <ButterflyMX.net> Domain Name, and < buterflymx.com> Domain Name, the "Infringing Domains"), which is almost identical to the BUTTERFLYMX® Mark. The domain name precisely tracks the

spelling of Plaintiff's Domain Name, with the exception of the "-" between "butter" and "mx" and the ".com" top-level domain or "TLD".

30.     Defendants registered and have used Infringing Domains with the bad faith intent to profit from said use.

31.     Plaintiff did not authorize Defendants to use or register the Infringing Domains bearing Plaintiff's business name and the BUTTERFLYMX® Mark.

32.     Defendants have never been known by the name BUTTERFLYMX®.

33.     Defendants have not made any legitimate noncommercial or fair use of the Infringing Domains.

34.     At the time that Defendants registered the Infringing Domains, Defendants were competitors of Plaintiff's, and were fully aware of Plaintiff's BUTTERFLYMX® Mark.

35.     The <ButterflyMX.co> Domain Name redirects to Defendants' <mvisystems.com> website.

36.     The <ButterflyMX.org> Domain Name redirects to Defendants' <mvisystems.com> website.

37.     The <ButterflyMX.net> Domain Name redirects to Defendants' <mvisystems.com> website.

38.     The <buterflymx.com> Domain Name redirects to Defendants' <mvisystems.com> website.

39.     The <butterfly-mx.com> Domain Name redirects to Defendants' <mvisystems.com> website.

40.     The goods and services offered by Defendants are highly similar to and directly competitive with the goods and services provided by Plaintiff under the BUTTERFLYMX® Mark.

41.     ButterflyMX has no association, affiliation, sponsorship or any connection to Defendants.

42.     On or about April 8, 2019, ButterflyMX sent a cease and desist letter to Defendants demanding that they stop using the Infringing Domain names to redirect consumers to Defendants' competing website and to immediately transfer them to ButterflyMX.

43.     Despite notice from ButterflyMX, Defendants continue to use the Infringing Domains to redirect users to their own website and thus use the BUTTERFLYMX® Mark in connection with the sale of video intercom security systems in direct competition with Plaintiff.

44.     ButterflyMX has been and continues to be damaged by Defendants' use of the Infringing Domains and the BUTTERFLYMX® Mark.

**D.  The Fraudulent Conveyance**

45.     On or about August, 8, 2019, after the instant litigation was commenced, Taub sent an unprompted message to the CEO of ButterflyMX, Cyrus Claffey via LinkedIn messenger threatening that: "We are liquidating [MVI] this coming Monday, so if you want to accept the offer we proposed to your lawyer, then you will need to do it beforehand. Otherwise there will be nothing left."

46.     Prior to sending that LinkedIn message, counsel for Plaintiff and MVI had been engaged in settlement negotiations.

47.     On or about August 21, 2019, less than two weeks after Taub send the LinkedIn message, MVI and MVII entered into an asset purchase agreement (the

"Agreement") whereby MVI sold its assets to MVII (the "Transaction").

48.     The Transaction was never revealed either specifically or indirectly to Plaintiff until Taub sent the LinkedIn Message.

49.     Pursuant to the Agreement, MVII purchased MVI's assets for $241,000.

50.     Pursuant to the Agreement the assets included MVI's intellectual property; demonstration and sample products, accounts receivable; inventory; business goodwill (including all of its domain names); customer, distributor and dealer contracts and agreements; customer sales records; office equipment; business license and permits, and all interests in WOOH Media LLC.

51.     Pursuant to the Agreement, MVII received any all intellectual and industrial proprietary rights and rights in confidential information of every kind and description anywhere in the word. The Agreement identifies at least one U.S. patent, one pending U.S. patent, two pending U.S. trademarks and two unregistered tradenames. The Agreement allocated $125,000 of the $241,000 purchase price for intellectual property rights.

52.     Upon information and belief, this allocated price is not a fair assessment of the intellectual property rights valuation.

53.     Further, MVII acquired MVI's entire business, including its intellectual property, purportedly without assuming any liabilities for the purchased assets. Accordingly, upon information and belief, the purchase price of $241,000, along with the allocated price for the Intellectual Property rights, was not for fair consideration.

54.     Upon information and belief $1 million dollars was invested into MVII. MVI's assets were only purchased for $241,000.

55.     Upon information and belief MVII was valued at $2 million dollars and is not

a fair valuation.

56.     On or about August 21, 2019, MVII also entered in a sublease agreement with MYVIDEOINTERCOM, LLC, whose managing member is Taub, for office space at 2607 Nostrand Avenue, Brooklyn, New York, the location of MVI's office.

57.     In purchasing MVI's assets, MVII purportedly did not assume any liabilities in relation to the instant litigation.

58.     Upon information and belief, the membership interests in MVII remained largely the same as those in MVI, with many of the same individuals, either personally or as members of other entities.

59.     Pursuant to MVII's limited liability company agreement, Taub has a 18% interest in MVII as a Class A member.

60.     Pursuant to MVII's operating agreement, Shraga D. Aranoff, MVI's President, COO and co-founder, has a 9% interest in MVII as a Class A member.

61.     Pursuant to MVII's limited liability company agreement, David Smith, MVI's CTO, has a 3% interest in MVII as a Class A member.

62.     Upon information and belief, MVII's other members are intrinsically linked to MVI.

63.     Pursuant to MVII's limited liability company agreement, Asher Fried, has a .617% interest in MVII as a Class C member

64.     Upon information and belief Asher Fried is a member of MVI.

65.     Pursuant to MVII's limited liability company agreement, MUMSBE Venture LLC has a 10.124% interest in MVII as a Class C member.

66.     Upon information and belief MUMSBE Venture LLC's members are Asher

Fried and Mark Josefovic,

67.     Upon information and belief, Mark Josefovic, along with Asher Fried, is also a member of MVI Ventures LLC.

68.     Upon information and belief, MVI Ventures LLC is a member of MVI.

69.      Pursuant to MVII's limited liability company agreement has a 12.884% interest in MVII as a Class C member.

70.     Upon information and belief, MH Equity LLC's registered agent is Michael Fried.

71.     Upon information and belief, Michael Fried is a member of MVI Equity Partners, LLC, a member of MVI.

72.     Upon information and belief, MVII provides identical services and products to those provided by MVI.

73.     As threatened by Taub in his LinkedIn message, upon information and belief, MVI has become insolvent.

74.     Upon information and belief, MVII and MVI engaged in the Transfer with knowledge that MVI would become insolvent and would avoid any liability in the instant litigation.

75.     Upon information and belief there is a continuity of the directors between MVI and MVII.

## FIRST CAUSE OF ACTION
### Violation of Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)

76.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 75 as though fully set forth herein.

77.     Plaintiff is informed and believes, and on that basis alleges, that Defendants registered and are using the Infringing Domains with the bad faith intent to profit off of Plaintiff's BUTTERFLYMX® Mark.

78.     Defendants were competitors of Plaintiff's at the time that they registered the Infringing Domains and were aware of Plaintiff's trademark rights.

79.     Users who type the Infringing Domains into their Web browsers are directed to Defendants' competing Website.  Using a domain name that is virtually identical to a competitor's trademark to redirect users to a competing Website is quintessential bad faith.

80.     The aforesaid actions constitute cybersquatting, in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

81.     The unauthorized use of the BUTTERFLYMX® Mark as a domain name has caused, and unless and until enjoined will continue to cause, irreparable injury to the BUTTERFLYMX® Mark and the good will associated with same.  An award of monetary damages alone cannot fully compensate Plaintiff for its injuries and therefore it lacks an adequate remedy at law.

82.     By reason of Defendants' acts alleged herein, Plaintiff is entitled to recover profits, actual damages, and the costs of the action, or statutory damages under 15 U.S.C. § 1117, on election by Plaintiff, in the amount of One Hundred Thousand Dollars ($100,000) for each domain name.

83.     The foregoing acts have been, and continue to be, deliberate, willful and wanton, making this an "exceptional" case within the meaning of 15 U.S.C. § 1117.

84.     Plaintiff has incurred costs, including without limitation, attorneys' fees and court costs, in seeking to retrieve the Infringing Domains.

## SECOND CAUSE OF ACTION
**Infringement of Registered Trademark in Violation of 15 U.S.C. § 1114(1)**

85.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 75 as though fully set forth herein.

86.    Plaintiff is the owner of the registered trademark BUTTERFLYMX®.

87.    Defendants' use of Plaintiff's BUTTERFLYMX® Mark to redirect consumers looking for Plaintiff and Plaintiff's trademark to their own website is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendants' goods and/or services in violation of the Lanham Act, 15 U.S.C. § 1114(1).

88.    Upon information and belief, Defendants' conduct, including their continuing infringement after notice, was committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's rights.

89.    The aforesaid infringement by Defendants has caused and, unless enjoined, will continue to cause, immediate and irreparable injury to Plaintiff's business, goodwill and reputation.

90.    Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, temporary, preliminary and permanent injunctive relief to protect its trademark and other legitimate business interests. Plaintiff is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

91.    Plaintiff has a substantial likelihood of success on the merits because of Defendants' blatant, willful and malicious infringement on Plaintiff's BUTTERFLYMX® Mark, especially after notice and opportunity to cease and desist were provided.

92.     By reason of Defendants' acts alleged herein, Plaintiff is entitled to recover profits, actual damages, and the costs of the action, or statutory damages under 15 U.S.C. § 1117.

93.     The foregoing acts have been, and continue to be, deliberate, willful and wanton, making this an "exceptional" case within the meaning of 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION
### False Designation of Origin in Violation of 15 U.S.C. § 1125(a)(1)(B)

94.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 75 as though fully set forth herein.

95.     Plaintiff is the owner of the registered trademark BUTTERFLYMX®.

96.     Defendants' use of Plaintiff's BUTTERFLYMX® Mark to redirect consumers looking for Plaintiff and Plaintiff's trademark to their own website is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendants' goods and/or services in violation of the Lanham Act, 15 U.S.C. § 1125(a).

97.     Upon information and belief, Defendants' conduct, including their continuing infringement after notice, was committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's rights.

98.     The aforesaid infringement by Defendants has caused and, unless enjoined, will continue to cause, immediate and irreparable injury to Plaintiff's business, goodwill and reputation.

99.     Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, temporary, preliminary and permanent injunctive relief to protect its trademark and other legitimate business interests. Plaintiff is reliant on its business reputation and its ability

to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

100.    Plaintiff has a substantial likelihood of success on the merits because of Defendants' blatant, willful and malicious infringement on Plaintiff's BUTTERFLYMX® Mark, especially after notice and opportunity to cease and desist were provided.

101.    By reason of Defendants' acts alleged herein, Plaintiff is entitled to recover profits, actual damages, and the costs of the action, or statutory damages under 15 U.S.C. § 1117.

102.    The foregoing acts have been, and continue to be, deliberate, willful and wanton, making this an "exceptional" case within the meaning of 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION
### Common Law Unfair Competition

103.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 75 as though fully set forth herein.

104.    Defendants registered and are using domain names to divert users searching for Plaintiff's Site to Defendants' competing business and website.

105.    Upon information and belief, Defendants intended to use their diversion of traffic from the Infringing Domains as a means to generate business by turning customers away from Plaintiff, and redirecting them to Defendants.

106.    The aforesaid acts by Defendants have caused and, unless enjoined, will continue to cause, immediate and irreparable injury to Plaintiff's business, goodwill and reputation.

107.    These acts and others stated above constitute a pattern of common law unfair competition, entitling Plaintiff to the recovery of compensatory and punitive damages.

**FIFTH CAUSE OF ACTION**
**Unfair and Deceptive Trade Practices in Violation of N.Y. GBL § 349**

108.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 75 as though fully set forth herein.

109.    Defendants' unauthorized use of the BUTTERFLYMX® mark in advertising constitutes deceptive practices through Defendants' appropriation for its own use of the name, brand, trademark, reputation, and goodwill of Plaintiff in violation of N.Y. Gen. Bus. Law § 349.

110.    The aforesaid acts by Defendants have caused and, unless enjoined, will continue to cause, immediate and irreparable injury to Plaintiff's business, goodwill and reputation.

111.     These acts and others stated above entitle Plaintiff to the recovery of compensatory and punitive damages.

**SIXTH CAUSE OF ACTION**
**Actual Fraudulent Conveyance in Violation of N.Y. DCL §§ 276, 276-a, 279**
**(As Against MVI and MVII)**

112.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 75 as though fully set forth herein.

113.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 71 as though fully set forth herein.

114.    On August 21, 2019, MVI sold its assets to MVII.

115.    MVII is composed of primarily of individuals and entities with an interest in MVI.

116.    This conveyance was made without fair consideration.

117.    The conveyance was made a time when MVI was insolvent or such

16

conveyance made him insolvent.

118.    After this conveyance, MVI was left with unreasonably small capital.

119.    MVII did not make the exchange in good faith and aided and abetted in the fraudulent conveyance of MVI by knowing that the conveyance was made to avoid debts to potential creditors, including Plaintiff.

120.    When making these conveyances, MVI intended or believed that they would incur debts beyond their ability to pay as they mature.

121.    Accordingly, pursuant to NY DCL Sections 276, 276-a and 279, Plaintiff is entitled to a judgment against MVI and MVII, joint and severally, in an amount to be determined at trial, and an order pursuant to Debtor and Creditor Law § 279.: (a)  restraining MVI and MVII from disposing of the sales proceeds from the Transaction unless those proceeds are placed in escrow the benefit of genuine, third party creditors; (b) appointing a receiver to take charge of MVI and MVII; (c) setting aside the Transaction; and (d) awarding reasonable attorney's fees incurred in this action.

**SEVENTH CAUSE OF ACTION**
**Constructive Fraudulent Conveyance in Violation of N.Y. DCL §§ 273, 275, 279**
**(As Against MVI and MVII)**

122.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 75 as though fully set forth herein.

123.    On August 21, 2019, MVI sold its assets to MVII.

124.    MVII is composed of primarily of individuals and entities with an interest in MVI.

125.    This conveyance was made without fair consideration.

126.    The conveyance was made a time when MVI was insolvent or such

conveyance made it  insolvent.

127.    After this conveyance, MVI was left with unreasonably small capital.

128.    MVII did not make the exchange in good faith and aided and abetted in the

fraudulent conveyance of MVI by knowing that the conveyance was made to

avoid debts to potential creditors, including Plaintiff.

129.    When making these conveyances, MVI intended or believed that they would

incur debts beyond their ability to pay as they mature.

130.    Accordingly, pursuant to NY DCL Sections 273, 275 and 279, Plaintiff is

entitled to a judgment against MVI and MVII, joint and severally, in an amount to

be determined at trial, and an order pursuant to Debtor and Creditor Law § 279.:

(a)  restraining MVI and MVII from disposing of the sales proceeds from the

Transaction unless those proceeds are placed in escrow the benefit of genuine,

third party creditors; (b) appointing a receiver to take charge of MVI and MVII;

(c) setting aside the Transaction; and (d) awarding reasonable attorney's fees

incurred in this action.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the Court enter a judgment in its favor and against

Defendants Taub,MVI and MVII, granting, as follows:

a.    That Defendants and all persons acting in concert be preliminarily and

permanently enjoined from using the domain names <ButterflyMX.co>,

<ButterflyMX.org>, <ButterflyMX.net> , <buterflymx.com>, and  <butterfly-

mx.com> and be ordered to file with the Court and serve on Plaintiff within thirty (30) days after the service on Defendants Taub and MVI of such injunction, or such shorter or extended period as the Court may direct, a report in writing under oath setting forth in detail the manner in which Defendants Taub and MVI have complied with the injunction;

b.  That Defendants, and their respective domain name registrar, and/or domain name registry, be ordered to transfer the domain names <ButterflyMX.co>, <ButterflyMX.org>, <ButterflyMX.net>, <buterflymx.com>, and  <butterfly-mx.com> to Plaintiff pursuant to 15 U.S.C. § 1125(d);

c.  That Plaintiff recovers from Defendants all damages sustained pursuant to 15 U.S.C. § 1125(d), 15 U.S.C. § 1114 and/or 15 U.S.C. § 1125(a);

d.  That Defendants be ordered to pay Plaintiff all damages sustained, reasonable costs, expenses, and attorneys' fees in prosecuting this action, pursuant to 15 U.S.C. 1117;

e.  That Defendants be ordered to relinquish control over any websites, webpages, web hosting, social media and/or email accounts which include, are associated with, or similar to Plaintiff's trademark;

f.  An Order directing Defendants to engage in appropriate and commensurate corrective advertising;

g.  A Temporary, Preliminary and Permanent Injunction enjoining and restraining Defendants and their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or

19

affiliated with Defendants, from using Plaintiff's trademark or any designation
confusing similar thereto;

h.  An order directing restraining MVI and MVII from disposing of the sales
proceeds from the Transaction unless those proceeds are placed in escrow the
benefit of genuine, third party creditors;

i.  An order appointing a receiver to take charge of MVI and MVII;

j.  An Order setting aside the Transaction;

k.  Actual damages in an amount to be determined at trial, but in no event less than
$1,000,000, due to common law unfair competition;

a.  An Order requiring a disgorgement of profits from Defendants to Plaintiff for all
claims so applicable;

b.  Exemplary or punitive damages in an amount appropriate to punish Defendants
and to make an example of Defendants to the community;

c.  That Plaintiff be awarded pre- and post-judgment interest to the maximum extent
allowed by law;

d.  An Order awarding attorneys' fees, costs and expenses incurred in connection
with this action to Plaintiff; and

e.  Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so trial pursuant to Rule 38 of the

Federal Rules of Civil Procedure.

Dated: Brooklyn, New York
         October 11, 2019

LEWIS & LIN, LLC

By: _/s/ David D. Lin_____
David D. Lin (DL-3666)
Lauren Valli (LV-7672)

81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
david@iLawco.com
lauren@iLawco.com

*Attorneys for Plaintiff*